**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DONALD DE LA HAYE,**

**Plaintiff,**

**v.** **Case No: 6:18-cv-135-Orl-22GJK**

**JOHN C. HITT, DANIEL J. WHITE, A. DALE WHITTAKER, MARIBETH EHASZ, MARCOS R. MARCHENA, ROBERT A. GARVY, KEN BRADLEY, CLARENCE H. BROWN, III , JOSEPH CONTE, NICK LARKINS, JOHN LORD, ALEX MARTINS, BEVERLY J. SEAY, WILLIAM SELF, JOHN SPROULS, DAVID WALSH and WILLIAM YEARGIN,**

**Defendants.**

---

## ORDER

This cause comes before the Court on Defendants' Motion to Dismiss Plaintiff Donald De La Haye's Complaint. (Doc. 43.) Plaintiff responded in opposition. (Doc. 47.) After being granted permission from the Court, Defendants replied. (Doc. 53.) On June 11, 2018, the Court held a hearing on Defendants' Motion. The motion is now ripe for review. For the foregoing reasons, the Court will **DENY in part** Defendants' Motion as to Count I and **GRANT in part** Defendants' Motion as to Count II.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

This action stems from the University of Central Florida's ("UCF") removal of Plaintiff from the UCF football team and cancellation of his 2017–2018 athletic scholarship because of his alleged violation of the National Collegiate Athletic Association's (NCAA) Bylaw 12.4.4. (Doc.

1.) UCF alleged Plaintiff violated Rule 12.4.4 by monetizing[1] his YouTube channel, which contained videos of Plaintiff discussing his life as a student-athlete and depicting his skills as a football player. (*Id.*)

As early as 2011, prior to his UCF enrollment and placement on the UCF football team, Plaintiff created multiple YouTube channels where he posted videos that he created. (*Id.* ¶ 14.) Plaintiff has been making and posting videos on social media platforms since he was twelve years old. (*Id.* ¶ 13.) On June 5, 2015, prior to Plaintiff's UCF enrollment, he created a YouTube channel named "Deestroying," the channel at issue. (*Id.* ¶ 15.) His videos are mostly autobiographical, consisting of documentation of his daily life as a student-athlete. (*Id.* ¶ 17.) As a result of Plaintiff's entertaining and insightful posts and comments, Plaintiff has gained a strong following on social media sites, including over 500,000 YouTube subscribers and almost 85,000 Instagram followers. (*Id.* ¶ 18.) Plaintiff asserts that he had a substantial social media following prior to his UCF enrollment and that UCF recognized that his following was because of his creativity and film-making talent and not a result of his student-athlete status. (*Id.* ¶¶ 19–20.)

In 2015, Plaintiff received an athletic scholarship to attend UCF. (*Id.* ¶ 10.) He forfeited other educational and athletic opportunities in reliance on his admission to UCF and his receipt of the athletic scholarship. (*Id.* ¶ 11.) Plaintiff relied on that scholarship as his sole means to finance his education. (*Id.*) In the Fall 2015 semester, Plaintiff matriculated at UCF and majored in pre-marketing. (*Id.* ¶¶ 10, 12.) Plaintiff became a kicker on UCF's football team. (*Id.* ¶ 9.) He played in all thirteen games of the 2016 season. (*Id.*) During his time on UCF's football team, Plaintiff remained active on social media where Plaintiff, like other social media users, used his image,

---

[1]Monetization allows creators of YouTube content, like Plaintiff, to earn money by allowing advertisements to be placed on their videos and by subscribers watching their videos. *How to Earn Money from Your Videos*, Subpart to *About the YouTube Partner Program*, YOUTUBE,https://support.google.com/youtube/answer/72857?hl=en (last visited June 19, 2018). To be eligible, a content creator's YouTube channel must have been watched for 4,000 hours in the previous twelve months and obtained 1,000 subscribers. *Id.*

name, and physical and intellectual attributes to communicate with his friends and followers. (*Id.* ¶ 21.) UCF never deemed any of Plaintiff's posts or videos to be inappropriate or offensive. (*Id.* ¶ 23.) UCF also never alleged that Plaintiff's social media communications caused disruption or brought disfavor on UCF. (*Id.* ¶ 23.) Further, Plaintiff was never disciplined by UCF for any academic, athletic, or personal misconduct of any kind. (*Id.* ¶ 25.)

Prior to Plaintiff's removal from the football team and cancellation of his scholarship, Plaintiff's coach recommended that his 2016–2017 scholarship be renewed for the 2017–2018 academic year. (*Id.* at 37.) Plaintiff's scholarship for the 2016–2017 academic year was a full football scholarship in the amount of $21,488.00, which covered his tuition and fees, room, board, course related books, and miscellaneous expenses.[2] (Doc. 43-2 at 5.) Under the scholarship agreement's terms, the scholarship was in effect for one academic year and could be renewed on a year-to-year basis for up to four years. (*Id.* at 6.) The agreement stated: "You are eligible to receive this athletically related financial aid provided you. . . abide by team, University, and NCAA codes, bylaws, rules, and regulations. . . ." (*Id.*) The scholarship agreement also warned Plaintiff that "if you render yourself ineligible for intercollegiate competition, or if you fail to comply with these terms and conditions listed in this grant-in-aid, your grant-in-aid may be canceled as per guidelines established by the University, UCFAA, and the NCAA." (*Id.*)

By mid-2017, Plaintiff had amassed a sufficient following on social media and he was able to receive modest compensation based on his original content on his "Deestroying" YouTube channel, otherwise known as monetization. (Doc. 1 ¶ 31.) At some point, UCF learned about the monetization of Plaintiff's YouTube channel and discussed the issue with him. (*See Id.* ¶¶ 26–27.) Plaintiff offered to demonetize the videos on the "Deestroying" Youtube channel that referenced

---

[2]As discussed *infra*, although generally courts are limited to the face of the complaint and its attachments when deciding a 12(b)(6) motion to dismiss, the Court can consider the scholarship agreement because it is central to Plaintiff's claims. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

his status as a student-athlete or depicted his skills as a football player. (*Id.* ¶ 34.) UCF rejected Plaintiff's offer to demonetize these videos and stated that Plaintiff could not post videos on his "Deestroying" Youtube channel that referenced his status as a student-athlete or depicted his skills as a football player, if the page also contained any other monetized videos (even without those depictions). (*Id.* ¶ 35.) Plaintiff alleges that UCF told him that he could not post a video to his account showing him standing on a beach throwing a football to his girlfriend if monetized videos were also on the same page. (*Id.* ¶ 36.) Consequently, on or about July 31, 2017, UCF removed Plaintiff from the football team and cancelled his scholarship. (*Id.* ¶ 26.) Since Plaintiff lost his scholarship, he was unable to afford to continue his studies at UCF. (*Id.* ¶¶ 47, 50.)

Plaintiff asserts that UCF supposedly took these actions to comply with the NCAA rules. (*Id.* ¶ 27.) The NCAA is a voluntary organization that regulates student athletics for member universities, including UCF. (*Id.*) According to Plaintiff, UCF is not required to be a NCAA member and can withdraw at anytime. (*Id.* ¶ 28.) Plaintiff also asserts that NCAA lacks authority over UCF's admission or scholarship determinations. (*Id.* ¶ 29.) Plaintiff alleges that the NCAA rules broadly prohibit student expression, including a student receiving compensation in connection with the use of a student's name, image, appearance, or physical attributes. (*Id.* ¶ 30.) Plaintiff specifically quotes NCAA Bylaw 12.4.4, which states: "[a] student-athlete may establish his or her own business provided that the student-athlete's name, photograph, appearance or athletics reputation are not used to promote the business." (*Id.*)[3]

[3]Although not mentioned in the Complaint, on July 11, 2017, UCF submitted a Legislative Relief Waiver on Plaintiff's behalf to the NCAA to avoid the normal application of NCAA Bylaw 12.4.4 to Plaintiff. (Doc. 53-1 at 8.) In the request, UCF asked that Plaintiff be allowed to conduct his YouTube business while being able to play on the football team and receive his scholarship. (*Id.*) The NCAA denied the waiver, but agreed to allow Plaintiff to keep his monetized YouTube account if he would remove the videos on the account that referenced his status as a student-athlete or depicted his football skills or ability. (Doc. 53 at 5.) This will not be considered in the Court's resolution of Defendants' 12(b)(6) motion to dismiss as it is not a part of the Complaint nor central to the Complaint.

**B. PROCEDURAL HISTORY**

On January 25, 2018, Plaintiff filed a two-count complaint seeking declaratory and injunctive relief against seventeen UCF officials in their official capacities, including UCF President John C. Hitt and Vice President and UCF Director of Athletics Daniel D. White, (collectively the "UCF Defendants").[4] (*Id.* ¶¶ 2–6.) Pursuant to § 1983, Plaintiff brings claims for violation of his right to free speech under the First and Fourteenth Amendments (Count I) and violation of his substantive right to due process under the Fourteenth Amendment (Count II). Under Count I, Plaintiff alleges that UCF's policies, practices, or customs in implementing NCAA Bylaw 12.4.4 against Plaintiff is overly broad, not content neutral, not narrowly tailored to serve compelling governmental interests, and does not leave open ample alternative channels of communication. (*Id.* ¶ 41.) Plaintiff asserts that UCF's cancellation of his scholarship was an adverse action taken by UCF solely because Plaintiff communicated on social media and received modest compensation for those communications. (*Id.* ¶ 44.) Plaintiff asserts that UCF's decision was based on the content of those communications, including Plaintiff's references to his life as a student-athlete. (*Id.* ¶ 45.) Plaintiff alleges that as a result of UCF's continued violation of Plaintiff's constitutional rights, he is now being and will continue to be denied his athletic scholarship and his place on UCF's football team. (*Id.* ¶ 47.) As a result, he cannot continue his education at UCF. (*Id.*) Under Count II, Plaintiff alleges that the arbitrary cancellation of his scholarship violates his substantive due process right under the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶ 53.) Plaintiff alleges that the cancellation of his scholarship was "arbitrary, unreasonable, and not reasonably related to a legitimate government interest because it

---

[4]Other UCF Defendants are A. Dale Whittaker, in his official capacity as UCF's Provost and Vice President for Academic Affairs, and Maribeth Ehasz, in her official capacity as UCF's Vice President for Student Development and Enrollment Services. (Doc. 1 ¶¶ 4–5.) The remaining UCF Defendants are sued in their official capacities as members of UCF's Board of Trustees: Marcos R. Marchena; Robert A. Garvey; Ken Bradley; Clarence H. Brown III; Joseph Conte; Nick Larkins; John Lord; Alex Martins; Beverly J. Seay; John Sprouls; William Self; David Walsh; William Yeargin. (*Id.* ¶ 6.)

was unrelated to his academic status, disciplinary standing, or athletic performance." (*Id.* ¶ 52.) Plaintiff asserts that he has a vested and constitutionally protected property interest in his athletic scholarship. (*Id.* ¶ 49.) Plaintiff asserts that UCF's cancellation of his scholarship resulted in his inability to continue his education at UCF. (*Id.* ¶ 50.)

Plaintiff seeks declaratory, injunctive relief, costs, and expenses, including reasonable attorney's fees. (*Id.* at 11–12.) Plaintiff seeks a judgment "declar[ing] that UCF's policies, practices, or customs of relying on the NCAA rule in taking adverse actions against [Plaintiff] based on the content of his speech is unconstitutional because it violates his right to freedom of speech and due process of law guaranteed by the First and Fourteenth Amendments to the United States Constitution." (*Id*.) Plaintiff also seeks "a permanent injunction against UCF and all agents, administrators, employees, or other persons acting on behalf of UCF, from enforcing the NCAA Policy against [Plaintiff] and reinstating his scholarship eligibility and all consequences flowing therefrom." (*Id* at 12.)

On April 2, 2018, the UCF Defendants filed a Motion to Dismiss the Complaint. (Doc. 43.) The UCF Defendants move to dismiss the Complaint under 12(b)(1) and 12(b)(6) on five grounds: (1) Plaintiff's requested relief is barred by the Eleventh Amendment because he seeks payment of state funds by UCF to correct past alleged breaches of legal duties by state officials; (2) Plaintiff's scholarship was conditioned on his complying with the NCAA rules and thus he waived his alleged claims; (3) Plaintiff lacks standing to bring his claims because former students do not have standing to challenge the policies of their former schools in suits for equitable relief; (4) Plaintiff fails to state a viable substantive due process claim because there is no constitutionally protected right to participate in intercollegiate athletics and any state-created right to athletic scholarship funds is not a fundamental right; and (5) Plaintiff's requested relief is useless as he cannot re-enroll for the

2017–2018 academic year (which is over), and he has no protectable right to receive football scholarship funds for any future academic years. (Doc. 43 at 2–3.)

On April 30, 2018, Plaintiff responded in opposition. (Doc. 47.) On May 18, 2018, the UCF Defendants replied. (Doc. 53.) On June 11, 2018, the Court heard oral argument on the Motion to Dismiss.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

The UCF Defendants move to dismiss the Complaint under 12(b)(1) and 12(b)(6). Rule 12(b)(1) enables a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) applies to the UCF Defendants' arguments based on standing and the Eleventh Amendment. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003) ("[Standing] directly implicates federal subject matter jurisdiction.") (citations omitted); *Smith v. Avino,* 91 F.3d 105, 107 (11th Cir. 1996)*, abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("Under the law of this Circuit, Eleventh Amendment immunity is considered to be in the nature of subject matter jurisdiction. . . ."). When considering a facial attack on subject matter jurisdiction, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). Attacks on the factual underpinning of jurisdiction, on the other hand, may allow a court to "consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). With factual attacks, "the burden is on the plaintiff to prove that jurisdiction exists." *Gibbs v. United States*, 865 F. Supp. 2d 1127, 1135 (M.D. Fla. 2012) (quoting *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002), *aff'd*, 517 F. App'x 664 (11th Cir. 2013). Here, since the parties submitted extrinsic evidence, such as declarations, e-mails,

and scholarship documents to support and oppose the Motion to Dismiss, the Court construes the UCF Defendants' challenge as a factual attack, and the Court is therefore not bound to weigh Plaintiff's allegations in his Complaint in the light most favorable to him. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (construing a 12(b)(1) challenge as factual because the parties submitted evidence outside of the complaint).

**B. Rule 12(b)(6) Standard**

The remainder of the UCF Defendants' arguments are analyzed under Federal Rule of Civil Procedure 12(b)(6). For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

Generally, a Rule 12(b)(6) motion is limited to the face of the complaint and any attachments. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of

the pleadings for purposes of Rule 12(b)(6) dismissal." *Id*. "[T]he defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id*. Additionally, the court may consider matters of which the court may take judicial notice. *Tellabs v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). In this case, while the parties attached numerous documents to their respective Motion, Response, and Reply, Plaintiff did not attach any documents to his Complaint other than the Civil Cover Sheet. (Doc. 1.) However, Plaintiff refers to his 2017–2018 scholarship, which is a renewal of his 2016–2017 scholarship, in his Complaint. (*See, e.g.*, Doc. 1 ¶¶ 37, 44, 47.) The UCF Defendants attached a copy of the 2016–2017 scholarship agreement to their Motion. (Doc. 43-2.) This scholarship agreement is central to Plaintiff's claims because the impetus of this action is the cancellation of Plaintiff's scholarship under the terms of the scholarship agreement. Therefore, the UCF Defendants' Motion to Dismiss need not be converted to a motion for summary judgment.

## III. ANALYSIS

### A. Standing

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of the parties' claims." *Bowman v. G.F.C.H. Enters.,Inc.*, No.14-22651-Civ, 2014 WL 5341883, at *1 (S.D. Fla. Oct. 20, 2014) (citations omitted). To establish standing under Article III of the Constitution, a plaintiff must allege the following: "(1) injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) that the injury will be redressed by a favorable decision." *Houston*, 733 F.3d at 1328 (citations and internal quotation marks omitted). Moreover, since Plaintiff is seeking declaratory and injunctive relief, "the injury-in-fact requirement insists that . . . [P]laintiff allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Strickland*

*v. Alexander*, 772 F.3d 876, 887 (11th Cir. 2014) (citations and internal quotation marks omitted). "This is because injunctions regulate future conduct only. . . . So a plaintiff seeking declaratory or injunctive relief must allege and ultimately prove a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury." *Id.* (citation and internal quotation marks omitted). "Past injury from alleged unconstitutional conduct does not in itself show a present case or controversy regarding injunctive relief, if unaccompanied by current adverse effects." *Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984) (citing *O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)). In this case, the UCF Defendants essentially argue that the Complaint should be dismissed because Plaintiff has not established a threat of future injury or that a favorable decision will redress his injuries. However, the Court finds that Plaintiff has established standing.

*1. Injury-in-Fact*

The UCF Defendants argue that since Plaintiff is no longer a UCF student or subject to the NCAA rules he challenges, and thus faces no imminent risk that UCF will again enforce the NCAA rules against him, he cannot establish standing because he faces no actual or imminent injury. (Doc. 43 at 16.) The UCF Defendants assert that former students lack standing to challenge the policies of their former schools and therefore Plaintiff, a former student, lacks standing to challenge the policies at issue in this case. (*Id.*) The UCF Defendants argue that as a non-student, Plaintiff is no longer subject to the NCAA rules and he does not allege any facts to suggest that he faces an immediate threat of exposure to the NCAA rules. (*Id.*) The UCF Defendants highlight that Plaintiff does not seek and has not applied for readmission to UCF and Plaintiff has not requested an order to place him back on the UCF football team. (*Id.*) Relatedly, the UCF Defendants assert that there is no allegation that Plaintiff will seek and receive readmission into UCF, and thus no allegation that he will ever again be subject to the challenged policies. (*Id.* at

17.) The UCF Defendants further argue that even if Plaintiff did seek readmission to UCF, he would still lack standing because any alleged injury resulting from UCF's future enforcement of the NCAA rules against Plaintiff would be speculative, at least and until he is readmitted to UCF and accepted back onto its football team. (*Id.*)

In response, Plaintiff argues the UCF Defendants' claim that he lacks standing because he is no longer a student at UCF is nonsensical: Plaintiff did not leave UCF voluntarily but was forced out of school because he would not surrender his First Amendment rights. (Doc. 47 at 6.) Plaintiff argues the Supreme Court has long recognized that former students have standing to seek relief against schools that expel or otherwise punish them in ways that violate their First Amendment rights. (*Id.*) (citing *Papish v. Board of Curators of Univ. of Mo.*, 410 U.S. 667 (1973) and *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)). However, these cases are of little help as neither of them address standing. Plaintiff also argues the UCF Defendants are incorrect in contending that he has failed to allege he will seek and receive readmission to UCF. (*Id.*) Plaintiff points out that in his request for relief he seeks reinstatement of "his scholarship eligibility and all consequences flowing therefrom." (*Id.*) Plaintiff states that an obvious consequence of reinstating Plaintiff's scholarship eligibility is that he would seek readmission and be readmitted to UCF. (*Id.*) Plaintiff asserts that the only reason he left UCF was because his scholarship was his sole means to finance his education and he has submitted a declaration to support this assertion. (Doc. 47 at 6; De La Haye's Decl., Doc. 47-1 ¶ 5.) In Plaintiff's declaration, he also states, "If my scholarship eligibility were restored, I would immediately seek readmission to UCF." (Doc. 47-1 ¶ 22.)

In reply, the UCF Defendants assert that, to establish standing to seek prospective injunctive relief against UCF, Plaintiff cites two inapposite cases from outside the Eleventh Circuit, referring to *Flint v. Dennison*, 488 F.3d 816, 823–24 (9th Cir. 2007), and *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003). (Doc. 53 at 2.) The UCF Defendants assert that these cases

do not alter the hornbook principle that former students lack a present injury to establish standing to seek prospective equitable relief against their former schools. (*Id.*) Instead, the UCF Defendants argue that these cases merely hold that a student seeking to expunge disciplinary records unsurprisingly alleges an ongoing injury sufficient to confer standing. (*Id.*) In contrast, in this case, Plaintiff is not seeking to expunge his disciplinary records. (*Id.*) However, Plaintiff relies on these cases to address the applicability of the Eleventh Amendment, not standing. (Doc. 47 at 11.) In fact, *Shephard* does not discuss standing and *Flint* addresses standing only briefly in its mootness analysis. The UCF Defendants also reject Plaintiff's reliance on *Papish v. Board of Curators of University of Missouri*, 410 U.S. 667 (1973), as it involves a former student challenging her expulsion and in the present case, Plaintiff was not expelled and could have continued and funded his studies with student loans like other non-scholarship students; instead, the UCF Defendants assert that he chose to stop attending classes during the Summer 2017 semester and unenrolled from classes for the Fall 2017 and Spring 2018 semesters. (Doc. 53 at 2) (citing Keaton's Decl., Doc. 53-1 ¶ (5)(B).)

"[T]o have standing, [a] [p]laintiff . . . must show past injury and a real and immediate threat of future injury." *Kennedy v. Beachside Commercial Properties, LLC*, No. 17-14356, 2018 WL 2024672, at *2 (11th Cir. May 1, 2018) (citation and internal quotation marks omitted)[5]. The UCF Defendants' arguments essentially go to threat of future injury and not past injury-in-fact. Plaintiff has adequately shown past injuries-in-fact, such as the alleged violation of his First Amendment rights, being removed from the football team, and the cancellation of his scholarship. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

[5]Unpublished opinions of the Eleventh Circuit constitute persuasive, not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

irreparable injury.") (citations omitted); *Farmer v. Bd. of Regents of the Univ. Sys. of Georgia*, No. 1:10-CV-02148-ODE-GGB, 2012 WL 12868428, at *7 (N.D. Ga. May 29, 2012) (finding that denial of football scholarships established an injury-in-fact), *report and recommendation adopted in part, rejected in part*, No. 1:10-CV-2148-ODE, 2012 WL 12871490 (N.D. Ga. Sept. 17, 2012), *aff'd*, 589 F. App'x 913 (11th Cir. 2014).

The crux of the UCF Defendants' argument revolves around Plaintiff not facing an imminent risk that UCF will again enforce the NCAA rules against him because he is no longer a student and no longer on the football team. This argument is well-founded and supported by Eleventh Circuit and Supreme Court case law. Cases have often turned on whether the plaintiff would be subject to the same injury again. *See, e.g.*, *Lyons*, 461 U.S. at 105 (determining if plaintiff had standing for injunctive relief based on the likelihood of police officers again placing him in a chokehold); *Washington v. Vogel*, 156 F.R.D. 676, 680 (M.D. Fla. 1994) ("To have standing to seek injunctive relief, Washington must initially demonstrate that she faces a real and immediate threat of again being stopped on I–95 by a VCSO officer."). However, the Court finds an alternative ground to find standing for declaratory and injunctive relief. In this case, Plaintiff is suffering "continuing, present adverse effects" as a result of UCF's alleged violation of his constitutional rights because he is now denied and will continue to be denied his athletic scholarship and his place on UCF's football team. (Doc. 1 ¶ 47.) As a result, Plaintiff alleges that he cannot continue his education at UCF. (Doc. 1 ¶ 47.); *see, e.g.*, *Lyons*, 461 U.S. at 102 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (quoting *O'Shea*, 414 U.S. at 495–96); *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1272 (11th Cir. 2015) ("Absent facts suggesting that former exposure to Estée Lauder's requirements caused 'continuing, present adverse effects' on DFA, Estée Lauder's past conduct

cannot be the basis of a request for injunctive relief.") (citations omitted); *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012) (holding that plaintiff lacked standing for declaratory relief against her employer because she only sought relief for a past injury, and "[s]he did not allege that her religious rights continue to be burdened or are likely to be burdened in the future"); *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (finding that plaintiff lacked standing for a declaratory judgment because he had been injured by judge's past conduct but made no allegation that the judge's conduct continued or would be repeated in the future.); *see also Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) ("To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."); *VanBrocklen v. Gov't Employees Ins. Co.*, No. 08-CV-25412211-1715, 2009 WL 414053, at *3 (N.D.N.Y. Feb. 18, 2009) (finding that former insured had standing to seek injunctive relief against GEICO, despite the lack of allegations in the complaint that former insured would face any future discrimination by GEICO, because the complaint indicated that GEICO cancelling his policy had the ongoing adverse affect that he would no longer receive disability benefits and psychological treatment).

In *Bowers v. National Collegiate Athletic Association*, 118 F. Supp. 2d 494 (D.N.J. 2000), a former high school football player challenged the NCAA's regulations that prohibited first-year college students from participating in Division I and Division II athletic programs if they failed as high school students to complete a core academic curriculum specified by the NCAA. *Id.* at 499. The NCAA required high school students to complete thirteen "core courses" before they could qualify to practice and compete as members of intercollegiate teams and receive college athletic scholarships. *Id.* Bowers suffered from a learning disability and thus completed numerous special education courses in high school. *Id.* The NCAA determined that these courses did not satisfy the "core course" requirement and deemed Bowers ineligible to compete as a member of an

intercollegiate team and receive a college athletic scholarship. *Id.* Bowers alleged that the NCAA discriminated against him because of his disability by declaring him ineligible to participate in intercollegiate athletics as a college freshman. *Id.* Among other things, Bowers sought injunctive relief against the NCAA and other defendants. *Id.* at 500. In analyzing standing, the court found that the parties had focused on the question of whether Bowers was likely to be subject to the NCAA's initial eligibility requirements in the future, when there was a more obvious basis for standing to seek injunctive relief: Bowers was suffering from continuous, present adverse affects because he lost a year of eligibility as a college freshman. *Id.* at 502. (citations omitted).[6]

The UCF Defendants argue that Plaintiff lacked standing as a former student to challenge UCF's policies. (Doc. 43 at 16.) The UCF Defendants present this as a bright-line rule. However, the cases on which the UCF Defendants rely do not discuss standing, but discuss mootness. *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430 (1976) (finding that the appeal in a school desegregation case was moot as to students who had graduated and their parents); *Bd. of Sch. Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 129, 95 S. Ct. 848, 850, 43 L. Ed. 2d 74 (1975) (holding that former students' claim for declaratory judgment and permanent injunction against a school board was moot because the students had graduated); *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cty., Fla.*, 842 F.3d 1324, 1330 (11th Cir. 2016) (ruling that former student's claims for injunctive and declaratory relief against his former middle school were moot because he was no longer a student at the school, since he was apparently promoted to high school)[7]; *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) (holding that four former high school students' claims for declaratory and injunctive relief against their school

---

[6]On a motion for reconsideration, the court vacated this decision because it overlooked a fact that showed that Bowers was not actually suffering continuing, present adverse effects. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 614 (D.N.J. 2001). However, the court's reasoning still stands. *VanBrocklen*, 2009 WL 414053, at *3 n.3 (relying on *Bowers*).

[7]The case does not state this directly but states "H.F. has completed the equivalent of graduating from Carver." *Carver Middle School*, 842 F.3d at 1330.

board's policy allowing prayer at high school graduation ceremonies were moot since they had graduated and no longer needed protection from the policy). While these cases decide mootness issues and not standing issues, they are still helpful. The Supreme Court has often remarked that "the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708, 145 L. Ed. 2d 610 (2000) (citation and internal quotation marks omitted).[8] The recurring theme in these cases is that the claims of former students seeking declaratory and injunctive relief were moot because they had graduated (or done the equivalent) and thus an injunction or declaratory relief was not necessary to protect them from future injury. *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) ("It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy.") (citation omitted). However, in this case, Plaintiff has not graduated and is suffering the continuing, adverse affects of UCF's decision to deem him ineligible for football and cancel his scholarship. Plaintiff has submitted a declaration stating that he plans to return to UCF when his scholarship eligibility is restored. The UCF Defendants point out that since Plaintiff has not been enrolled for two semesters, he must apply for readmission and then be formally readmitted by UCF. However, there is no indication that Plaintiff has any academic or disciplinary issues that would preclude his readmission to UCF.

In cases directly addressing the issue of former students' standing to sue their former institutions for injunctive and declaratory relief, courts have looked at the underlying facts of the case to determine standing. A plaintiff's status as a former student was not an automatic bar to

[8]"But mootness and standing are distinct doctrines that must not be confused. The difference between the two is that [mootness] has a 'capable of repetition, yet evading review' exception." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 n.16 (11th Cir. 2007) (citations omitted).

standing. For example, in *B.C. v. Plumas* , 192 F.3d 1260 (9th Cir. 1999), the court found that a former student lacked standing to seek injunctive relief on his §1983 claim alleging that the dog sniff of students at a public high school violated the Fourth Amendment, since plaintiff was no longer a student at the high school or at any other school in the defendant school district, he had not been a student at high school since time of the incident, and he had no plans to return to school anywhere in the district. *Compare Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 382–383 (5th Cir. 2016) (finding that former student lacked standing for injunctive relief based on school's disability accommodations because he withdrew from school and repeatedly stated that he would not return), *and Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1302 (11th Cir. 2007) (holding that former student who was allegedly sexually assaulted by other students did not have standing to pursue injunctive relief against her former school because the alleged assailants no longer attended the school, the plaintiff no longer attended the school, and therefore injunctive relief would not prevent future harm to plaintiff), *with Qualls v. N.I.U.*, No. 02 C 50081, 2003 WL 1949301, at *1 (N.D. Ill. Apr. 23, 2003) (holding that former student had standing to seek injunction against his former school because he was dismissed before he graduated and was seeking readmission); *Mercado v. Kingsley Area Sch./Traverse City Pub. Sch. Adult Educ. Consortium*, 727 F. Supp. 335, 340 (W.D. Mich. 1989) (rejecting defendants' argument that plaintiff lacked standing as a former student to seek injunctive relief "because an order preventing the future diversion of funds would allow the adult education program to offer the classes she need[ed] to attain a high school diploma"); *Anable v. Ford*, 663 F. Supp. 149, 152 (W.D. Ark. 1985) ("As victims of an unconstitutional search, both former students clearly have standing to argue the legality of the searches in an action for declaratory . . . relief."). In this case, Plaintiff's plan is to return to UCF if the Court grants an injunction restoring his scholarship eligibility, and his lack of his athletic scholarship is preventing him from attending UCF. These factors weigh in

favor of him having standing at this stage. Further, cases that held former students lacked standing to seek injunctive relief against their former schools generally focused on the former student not being likely to suffer the same injury again. *See, e.g.*, *B.C.*, 192 F.3d at 1264 ("To have standing to seek injunctive relief, B.C. must demonstrate a real or immediate threat that defendants will again subject him to an illegal dog sniff of his person.") (citations omitted). As discussed *supra*, this is one way to establish standing for injunctive and declaratory relief. A plaintiff alleging continuous, present adverse affects from past conduct is an alternative avenue to establish standing. Therefore, the Court finds that Plaintiff has satisfied the injury-in-fact requirement.

*2. Causation/Traceability*

To establish causation, "a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct. . . ." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984), *overruled on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). Plaintiff satisfies the causation element because Plaintiff's alleged violations of his First Amendment and substantive due process rights were caused by UCF removing him from the football team and cancelling his scholarship. Plaintiff alleges that the UCF Defendants either (1) engage in the "general administration of all university activities"; (2) "implement[] or enforce[] the unconstitutional policies, practices, or customs of UCF described herein"; or (3) "ha[ve] authority for policies related to students, enrollment of students, student records, student activities, financial assistance, and other student services." (Doc. 1 ¶¶ 2–6.) The UCF Defendants do not dispute these allegations nor contest this element. The Court finds that Plaintiff has satisfied the causation element.

*3. Redressability*

The UCF Defendants argue that Plaintiff lacks standing because a favorable judgment cannot redress his alleged injuries. (Doc. 43 at 18.) The UCF Defendants assert that they are not

authorized to award Plaintiff the scholarship funds he seeks because he is no longer a UCF student. (*Id.*) The UCF Defendants point out that the NCAA bylaws prevent them from awarding Plaintiff an athletic scholarship. (*Id.*) They emphasize that under the NCAA bylaws, institutions such as UCF may not award athletic scholarships to recipients who are not enrolled in at least a minimum full-time program of studies, are not in good academic standing, or have not maintained progress toward a baccalaureate or equivalent degree. (*Id.*at 19.)The UCF Defendants assert that the Complaint's allegations make clear that Plaintiff does not meet these criteria, and even if Plaintiff's requested injunction were granted, they could not provide that relief until Plaintiff applies for readmission, is readmitted, is accepted back onto the football team, and satisfies all other criteria for a scholarship award, which Plaintiff expresses no intent or desire to do so. (*Id.* at 19–20.) The UCF Defendants also argue that UCF cannot award scholarship funds for the 2017–2018 academic year, the only scholarship funds in which Plaintiff asserts a plausible interest, because the deadline to enroll in classes has passed and Plaintiff did not enroll in any classes for the Spring 2018 semester. (*Id.* at 21.)

In response, Plaintiff points to an internal email between UCF officials, showing that UCF had a choice to allow him to retain his scholarship for the 2017–2018 academic year despite his removal from the football team, and the UCF Athletics Department chose to cancel the aid. (Doc. 47 at 6–7.) Plaintiff also rejects the UCF Defendants' reliance on the NCAA bylaws because Plaintiff asserts that those rules have no bearing on the constitutional question of whether UCF may deny a scholarship benefit simply because UCF disagrees with the content of a student's off-campus speech. (*Id.* at 7.) Plaintiff also responds that even though the 2017–2018 school term is nearly completed, the passage of this school year is immaterial because a new school year is always just around the corner. (*Id.*) Plaintiff asserts that this Court reinstating his scholarship eligibility would redress his injuries by allowing him to return to school for the 2018–2019 academic year.

(*Id.*) Plaintiff also points out that he is seeking a declaratory judgment and this claim would survive even if he lost on the injunction claim. (*Id.*)

To establish redressability, a plaintiff must show that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (quotation omitted). Clearly if the Court granted the injunctive and declaratory relief requested by Plaintiff in this case, his injuries would be redressed. His scholarship eligibility would be restored and he would have the financial means to continue his education at UCF. The UCF Defendants' main argument is that none of the officials have the authority to confer an athletic scholarship on an individual who is not a UCF student, let alone a student-athlete, relying on NCAA Bylaws 14.01.2[9] and 15.01.5.[10] While these Bylaws do support this contention, under the Former Student-Athletes exception, NCAA Bylaw 15.01.5.2, "Institutional financial aid may be awarded to a former student-athlete for any term during which he or she is enrolled (full time or part time)." (Doc. 43-3 at 208.) Although Plaintiff is not currently a UCF student, as discussed *supra*, he has clearly stated he will seek readmission to UCF upon the Court restoring his scholarship eligibility. Like any other scholarship, Plaintiff's scholarship would be conditional on his attending UCF. Universities and colleges confer scholarships to non-students, such as high school applicants, contingent on their attending that particular college or university. Moreover, as revealed by the internal e-mails between UCF employees provided by Plaintiff with his Response, although Plaintiff was deemed to be ineligible to be on the UCF football team, UCF had the choice to let him retain his 2017–2018 scholarship. (Doc. 47-1 at 13) ("The awarding agency has a choice to allow the SA to keep

---

[9]Under NCAA Bylaw 14.01.2: "To be eligible to represent an institution in intercollegiate athletics competition, a student-athlete shall be enrolled in at least a minimum full-time program of studies, be in good academic standing and maintain progress toward a baccalaureate or equivalent degree." (Doc. 43-3 at 170.)

[10]Under NCAA Bylaw 15.01.5: "A student-athlete must meet applicable NCAA (see Bylaw 14), conference and institutional regulations to be eligible for institutional financial aid." (*Id.* at 208.)

his aid for the 2017–2018 year. Understandably so, [UCF] Athletics chose to cancel the aid because he (SA) rendered himself ineligible by not following NCAA rules."). The UCF Defendants argue that, even if Plaintiff's requested injunction were granted, they could not provide that relief – at least not before Plaintiff applies for readmission, is readmitted, is accepted back onto the football team, and satisfies all other criteria for a scholarship award, which Plaintiff has allegedly expressed no intent or desire to do. (Doc. 43 at 20.) However, Plaintiff is seeking readmission to UCF upon the Court re-instating his scholarship eligibility and his receipt of the scholarship being contingent on his actually becoming a UCF student. As discussed *supra*, there have been no allegations of academic or disciplinary issues precluding Plaintiff's readmission into UCF. Moreover, as evidenced by the e-mails between the UCF officials as well as the Former Student-Athlete Exception, Plaintiff does not need to be on the football team to be awarded an athletic scholarship.

The UCF Defendants next argue that UCF cannot award scholarship funds for the 2017–2018 academic year, the only year in which Plaintiff allegedly asserts a plausible interest in a scholarship, because it is essentially the end of the academic year, and well after the deadline to enroll in classes. (Doc. 43 at 20–21.) However, as Plaintiff persuasively points out, the passage of this school year is immaterial as there is always a new school year approaching. (Doc. 47 at 7.) Therefore, the Court finds that Plaintiff satisfies the redressability element. Thus, the Court finds that Plaintiff satisfies all the elements for standing to seek injunctive and declaratory relief. The Court turns to the issue of whether Plaintiff's claims are barred by the Eleventh Amendment.

**B. Eleventh Amendment**

The Eleventh Amendment states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. It has been interpreted to bar suits brought against a State in federal court by

her own citizens, as well as those of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 13–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment generally bars any suit brought in federal court against a state, state agency, or state officials acting in their official capacities. *See Seminole Tribe v. Florida*, 517 U.S. 44, 74, 116 S.Ct. 1114, 1132, 134 L.Ed.2d 252 (1996). But three exceptions allow suits against a state, state agency, or state officials: (1) Congress may abrogate the States' immunity; (2) a state may waive its immunity; or (3) under the *Ex parte Young* doctrine, a plaintiff may file suit against state officials acting in their official capacities seeking prospective injunctive relief for ongoing violations of federal law. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1301 (11th Cir. 2007) ("[A] party may sue the state if the state has waived its immunity or if Congress has validly abrogated the state's immunity.") (citations omitted); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–42 (11th Cir. 1999) (applying the *Ex parte Young* doctrine).

In this case, the *Ex parte Young* exception is at issue. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298–299, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646. In this case, Plaintiff alleges an ongoing violation of federal law in his Complaint by stating:

> As a direct result of the Defendants' continued violation of De La Haye's constitutional rights, he is now being and will continue to be denied his athletic scholarship and his place on UCF's football team. He has also lost his ability to

> receive his education from UCF under the athletic scholarship he earned through his athletic talents.

(Doc. 1 ¶ 47.) The real issue in this case is whether Plaintiff's requested relief is prospective or retroactive. The Court finds that the relief he seeks is prospective and the Eleventh Amendment does not bar Plaintiff's claims.

The crux of the UCF Defendants' argument is that Plaintiff's injunction requiring the reinstatement of his scholarship eligibility, which necessarily includes the payment of $21,488.00 per year for Plaintiff's school expenses, is the kind of relief that the Supreme Court and Eleventh Circuit have rejected under the Eleventh Amendment. (Doc. 43 at 7.) The UCF Defendants argue that Plaintiff is seeking payment of state scholarship funds to reverse the consequences of allegedly unlawful conduct which occurred in the past. (*Id.* at 5.) They argue in *Edelman*, the Supreme Court held that the *Ex parte Young* exception to Eleventh Amendment immunity does not apply when the practical effect of the requested relief is the payment of funds from the state treasury to remedy the past breach of a legal duty. (*Id.* at 5–6.) They assert that the Eleventh Circuit has applied *Edelman* to require dismissal of suits for equitable relief that sought disbursement from the state treasury of funds that the plaintiff claims were wrongly withheld. (*Id.* at 6.) (citing *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1251, 1244–46 (11th Cir. 2014); *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219–20 (11th Cir. 2000)); *Camm v. Scott*, 834 F. Supp. 2d 1342, 1349–50 (M.D. Fla. 2011)). The UCF Defendants point out that Plaintiff is not seeking an injunction to readmit him to UCF or reinstate him to the football team. (Doc. 43 at 7.) However, since UCF did not expel him and there does not appear to be any obstacle to his readmission, it is unclear why Plaintiff would need an injunction requiring his readmission. The UCF Defendants also assert that Plaintiff does not allege that UCF continues to violate his rights today. *(Id.*) However, this is incorrect. As discussed *supra*, Plaintiff alleges that UCF continues to violate his rights.

In response, Plaintiff argues that his requested relief meets the *Ex parte Young* exception. (Doc. 47 at 7.) Plaintiff contends that he is requesting an injunction requiring UCF to discontinue its finding that he is ineligible for his scholarship because he exercised his right to free expression under the First Amendment, as well as a declaration that UCF's actions were an impermissible regulation of speech. (*Id*. at 9.) Plaintiff argues that the reinstatement of his scholarship eligibility is merely a necessary consequence of that cessation. (*Id*.) Plaintiff asserts that the Complaint seeks injunctive and declaratory relief relating to UCF's eligibility determination rather than any sort of equitable restitution of funds wrongly withheld in the past. (*Id*.) Plaintiff argues that the Eleventh Amendment does not preclude injunctive relief against a state official even where compliance with the injunction will cost the state money in the future. (*Id*.) (citing *Florida Dep't of State v. Treasure Salvors, Inc*., 458 U.S. 670, 690 n.27 (1982); *Milliken v. Bradley*, 433 U.S. 267, 289 (1977)). Therefore, Plaintiff asserts that even if Plaintiff's claims against officials of UCF require payment of state funds, they are valid under *Ex parte Young* because they seek reinstatement of Plaintiff's scholarship eligibility in the future. (Doc. 47 at 10.) Plaintiff compares this situation to the expenditure of funds resulting from the reinstatement of employees wrongfully terminated from public employment, which involves the state paying a salary and benefits to a reinstated employee. (*Id*.) Plaintiff relies on *Lane v. Central Alabama Community College*, 772 F.3d 1349, 1350 (11th Cir. 2014), in which the Eleventh Circuit found that the plaintiff's reinstatement to his position at a community college was acceptable prospective relief under *Ex parte Young* that was not barred by the Eleventh Amendment despite the reinstatement causing the State to prospectively pay the Plaintiff's salary. (Doc. 47 at 10.) Plaintiff distinguishes his case from *Florida Association of Rehabilitation Facilities, Inc. v. State of Florida Department of Health & Rehabilitative Services.*, 225 F.3d 1208 (11th Cir. 2000), a case heavily relied on by the UCF Defendants, because he is not seeking any damages or equitable restitution for scholarship money owed in the past but he instead

seeks an order that his eligibility be reinstated on an ongoing basis, for future years of eligibility. (Doc. 47 at 11.) Plaintiff refutes the UCF Defendants' argument that the relief sought exceeds what is allowed under *Ex parte Young* because it seeks to remedy a discrete past injury. (*Id*.) Plaintiff argues that the fact that an injunction also remedies a past harm does not "render[] an otherwise forward-looking injunction retroactive. If it did, the rule allowing prospective relief would be substantially undermined because the need for prospective relief often arises out of a past injury." (Doc. 47 at 11.) (quoting *Russell v. Dunston*, 896 F.2d 664, 668 (2d Cir. 1990)). As Plaintiff points out, other courts have upheld claims for reinstatement to educational institutions including for the denial of scholarships under *Ex parte Young*. (*Id*.) Plaintiff argues that he is not precluded from seeking prospective and declaratory relief simply because he is not presently enrolled at UCF, since the only reason he is not enrolled is because UCF unconstitutionally revoked his scholarship. (*Id*.) He asserts that he will re-enroll at UCF once he is deemed eligible for his scholarship. (*Id*.) Plaintiff asserts that courts have consistently permitted plaintiffs not presently attending educational institutions to seek prospective relief against officials of those institutions. (*Id*.) (citing *Flint v. Dennison*, 488 F.3d 816, 823-24 (9th Cir. 2007); *Shepard v. Irving*, 77 F. App'x 615, 617, 620 (4th Cir. 2003); *Carten v. Kent State Univ.*, 282 F.3d 391, 393 (6th Cir. 2002)). Plaintiff argues that the ongoing injury in this case is plain: the continued denial of his scholarship eligibility prevents Plaintiff from pursuing a college education that UCF promised him. (Doc. 47 at 12.) As a result, Plaintiff argues, prospective injunctive relief and a declaratory judgment that UCF acted unconstitutionally in this case are appropriate. (*Id.* at 13.) Plaintiff argues that the UCF Defendants' arguments against the claim for declaratory relief, based on the same arguments they made regarding injunctive relief, similarly collapse. (*Id.*)

The UCF Defendants first attack Plaintiff's request for an injunction requiring the reinstatement of his scholarship eligibility. Relying on *Florida Association*, the UCF Defendants

argue that this claim does not fall within the *Ex parte Young* exception because Plaintiff "seeks a declaration or injunction effectively call[ing] for the payment of state funds as a form of compensation for past breaches of legal duties by state officials."[11] *See Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1221 (11th Cir. 2000) (citations omitted). In *Florida Association*, operators of intermediate care facilities for developmentally disabled brought a § 1983 action against the Florida Department of Health and Rehabilitation Services and state officials, seeking injunctive and declaratory relief for alleged violations of the Medicaid Act's reimbursement provisions. *Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1210. The plaintiffs alleged that the defendants were not adequately reimbursing them under the Boren Amendment of the Medicare program. *Id.* at 1212. The district court ruled in the plaintiffs' favor but the Eleventh Circuit vacated sections of the district court's injunction under the Eleventh Amendment. *Id.* at 1226. The Eleventh Circuit determined that in essence the district court ordered the defendants to rectify improper past payments to the plaintiffs. *Id.* at 1220. The Court stated that "[b]ecause some of the relief ordered in the final judgment requires the State in effect to rectify improper past payments, we see no way to distinguish the holding of *Edelman* which prohibits exactly this sort of retroactive award." *Id.* The UCF Defendants rely on this quote from the case: "the Eleventh Amendment's immunity is triggered when a declaration or injunction effectively calls for the payment of state funds as a form of compensation for past breaches of legal duties by state officials." *Id.* The facts of this case are distinguishable from *Florida Association*

[11] The UCF Defendants also state that "[Plaintiff] is not entitled to such relief because *Ex parte Young* does not shield a 'final judgment requiring a state to pay money for illegal conduct which *pre-dates* the judgment.'" (Doc. 43 at 8) (quoting *Fla. Ass'n of Rehabilition Facilities*, 225 F.3d at 1222) (emphasis in original). However, the UCF Defendants omit key language from this quote. The full quote is "First, we are aware of no federal court that has upheld against Eleventh Amendment scrutiny a final judgment requiring a state to pay money for illegal conduct which pre-dates the judgment *on the theory that the conduct violated an earlier preliminary injunction and therefore the remedy was prospective*." *Fla. Ass'n of Rehabilition Facilities*, 225 F.3d at 1222 (emphasis added). Taken out of context, the UCF Defendants' quote is misleading, and it does not apply here because there is no earlier preliminary injunction involved in this case.

because *Florida Association* involved the payment of state funds to redress prior inadequate reimbursements.[12] In the present case, Plaintiff is not seeking reimbursement. In addition, Plaintiff's requested injunction does not call for the payment of state funds as a form of compensation for past breaches of legal duties by state officials. Plaintiff is merely seeking an order that his scholarship eligibility be reinstated on an ongoing basis for future years of eligibility, not damages or equitable restitution for scholarship money owed in the past. Moreover, courts have found similar requests to fall within the *Ex parte Young* exception. For example, in *Osteen v. Board of Regents of Regency Universities*, No. 91 CV 20247, 1992 WL 74995, at *1 (N.D. Ill. Apr. 8, 1992), *aff'd sub nom. Osteen v. Henley*, 13 F.3d 221 (7th Cir. 1993), a former student-athlete sought injunctive relief against university officials requiring his reinstatement as a student with or without the restoration of his football scholarship after he was expelled from the university for two years and his athletic scholarship was revoked. *Osteen v. Henley*, 13 F.3d at 223. The Seventh Circuit affirmed the district court's determination that the former student-athlete's request for reinstatement of his scholarship was prospective relief not barred by the Eleventh Amendment because he was not seeking retroactive payments of "scholarship funds which were not given to plaintiff as a result of his expulsion. Rather, it only appear[ed] that plaintiff's claim for injunctive relief is seeking reinstatement to NIU and that upon reinstatement he receive his scholarship." *Osteen*, 1992 WL 74995, at *2, *aff'd sub nom. Osteen v. Henley*, 13 F.3d 221 (7th Cir. 1993); *see Derezic v. Ohio Dep't of Educ.*, No. 2:14-CV-51, 2014 WL 4206580, at *8 (S.D. Ohio Aug. 25, 2014) (finding that plaintiffs' request to have their children's scholarships reinstated "qualifie[d] as prospective equitable relief and [fell] within the boundaries of the *Ex parte Young* exception").

---

[12]Similarly in the other cases that Plaintiff relies: *Seminole Tribe of Florida v. Florida Department of Revenue*, 750 F.3d 1238 (11th Cir. 2014) and *Camm v. Scott*, 834 F. Supp. 2d 1342 (M.D. Fla. 2011), the courts struck down declaratory and injunctive relief that essentially called for reimbursements from the state treasury based on past unlawful acts. In this case, Plaintiff is not seeking a reimbursement from the state treasury.

Further, in the employment context, the Eleventh Circuit has "determined previously that requests for reinstatement constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment." *Lane*, 772 F.3d at 1351. These cases are indistinguishable from Plaintiff's, who seeks reinstated scholarship eligibility, which is prospective relief. *See Derezic*, 2014 WL 4206580, at *8 (relying on reinstatement employment cases to find that plaintiffs' request to reinstate their children's scholarships was prospective relief under *Ex parte Young*).

The UCF Defendants rely on two cases that reached an opposite result but are distinguishable: *Graham v. National Collegiate Athletic Association*, 804 F.2d 953 (6th Cir. 1986) and *Brown v. Texas State University System Board of Regents*, No. A-13-CA-483-SS, 2013 WL 6532025 (W.D. Tex. Dec. 12, 2013). In *Graham,* the Sixth Circuit found that a former-student athlete's request for damages from state officials in their official capacities, to reimburse him for paying his own tuition after the University of Louisville revoked his scholarship, was barred by the Eleventh Amendment. *Graham,* 804 F.2d at 960–61. This case involved a request for compensatory damages, which is clearly not allowed under the Eleventh Amendment. In contrast, Plaintiff is not seeking any past out-of-pocket tuition costs as a result of UCF cancelling his scholarship. In *Brown*, a former student-athlete challenged his university's decision to remove him from the basketball team and terminate his athletic scholarship. *Brown*, 2013 WL 6532025, at *1. The former student-athlete sought "various forms of relief including: (1) damages—liquidated, compensatory, and punitive; (2) an order reinstating Brown on the TSU basketball team; and (3) an order reinstating Brown's athletic scholarship" against various university officials in their individual and official capacities. *Id.* The court determined that the former student-athlete's claims were barred by the Eleventh Amendment because he sought retroactive relief—"damages to compensate past injuries" — which would be paid from the state treasury. *Id.* at *3. (citation

omitted). Plaintiff's request for injunctive relief is distinguishable because he is not requesting liquidated, compensatory, and punitive damages.[13]

The UCF Defendants also assert that reinstating Plaintiff's scholarship eligibility will include the payment of $21,488.00 per year for his school-related expenses from state funds. However, the Eleventh Circuit's per curiam opinion in *Lane v. Central Alabama Community College*, 772 F.3d 1349 (11th Cir. 2014), is on point. In *Lane*, a former employee at a community college sought an injunction requiring the reinstatement of his employment against the community college and its officials in their individual and official capacities. *Id.* The panel reiterated the Eleventh Circuit's previous determination that requests for reinstatement constitute prospective injunctive relief which falls within the *Ex parte Young* exception and is not barred by the Eleventh Amendment. *Id.* at 1351 (citations omitted). The Court stated that, "Lane's reinstatement would require the State to pay Lane's salary does not trigger Eleventh Amendment protection. The Supreme Court has recognized that compliance with the terms of prospective injunctive relief will often necessitate the expenditure of state funds. And '[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*.'" *Id*. (quoting *Edelman*, 415 U.S. at 668). Consistent with *Lane*, the reinstatement of Plaintiff's scholarship eligibility is not properly characterized as a demand for damages to compensate for a past injury, but as an equitable remedy, and UCF allowing Plaintiff to receive scholarship funds—solely in the future—by requiring UCF to find him eligible on an ongoing basis is not barred by the Eleventh Amendment. The mere fact that Plaintiff may receive future scholarship funds from the state treasury as a result of his eligibility reinstatement does not preclude this remedy. As Plaintiff correctly points out, the Eleventh Amendment does not preclude

[13]The Court disagrees with *Brown* in regards to the reinstatement of the plaintiff on the basketball team and his scholarship. The court provided no independent analysis for these claims to justify its ruling.

injunctive relief against a state official even where compliance with the injunction will cost the state money in the future. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107 n.18 (1985) ("Monetary relief that is 'ancillary' to injunctive relief also is not barred by the Eleventh Amendment.") (citation omitted); *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 690 n.27 (1982) ("a prospective decree that has an 'ancillary effect' on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*.") (citations and internal quotations omitted). The UCF Defendants also attack this form of relief because it was based on a past breach by state officials. However, employment reinstatement cases are often based on past breaches like the one in *Lane*, which was an alleged retaliation in violation of the First Amendment, but this has not prevented the Eleventh Circuit from finding that reinstatement in these cases was prospective relief. *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490 (11th Cir. 1995) (finding injunction requiring reinstatement to state employment based on state official's past sexual harassment of female employees qualified as prospective relief). Moreover, the reinstatement in these cases would require payment of these employees' wages (prospectively) from state funds.

The UCF Defendants contend that, since Plaintiff is no longer a UCF student and no longer a member of UCF's football team, he is no longer subject to the alleged policy he challenged; thus, his requested injunction boils down to a meaningless "obey the law injunction" and is aimed solely at past conduct rather than a continuing controversy between the parties, relying on *Church v. City of Huntsville*, 30 F.3d 1332, 1335 (11th Cir. 1994). The UCF Defendants' contention is irrelevant under the *Ex parte Young* analysis because "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc.*, 535 U.S. at 645 (citation and

internal quotation marks omitted.) Plaintiff's requested injunction preventing UCF from applying the NCAA Bylaw against him in the future seeks prospective relief. Moreover, the UCF Defendants' reliance on *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994), is misplaced as the section they rely upon discussed standing, not the Eleventh Amendment. Further, "[w]hat Defendants fail to grasp, however, is that the prohibition [against "obey the law" injunctions] applies to a court's unspecific grant of an injunction, rather than a party's request." *Sec. & Exch. Comm'n v. Kingdom Legacy Gen. Partner, LLC*, No. 2:16-CV-441-FTM-38MRM, 2017 WL 417093, at *10 (M.D. Fla. Jan. 31, 2017).

The UCF Defendants' final argument is Plaintiff's request for declaratory judgment[14] is barred, just as injunctive relief is. (Doc. 43 at 9.) However, because the Court finds that Plaintiff's injunction is not barred by the Eleventh Amendment, the UCF Defendants' argument fails. They rely on *Green v. Mansour*, 474 U.S. 64, 71, 106 S. Ct. 423, 427, 88 L. Ed. 2d 371 (1985). In *Green*, the Supreme Court determined that a declaratory judgment was barred by the Eleventh Amendment because"[t]here [was] no claimed continuing violation of federal law, and therefore no occasion to issue an injunction." *Id.* at 73. In contrast, in this case, Plaintiff alleges a continuing violation of the federal constitution (Doc. 1 ¶ 47) and an injunction would be appropriate relief. The UCF Defendants also argue that because Plaintiff seeks a declaration that adjudicates only past conduct, the requested relief would amount to an advisory opinion and should be dismissed. (Doc. 43 at 10.) The UCF Defendants emphasize how the adverse actions mentioned by Plaintiff occurred in the past and he is no longer at UCF. (*Id.*) As discussed *supra*, Plaintiff stated his intent to seek readmission once his scholarship eligibility is restored. This request for relief also meets the *Ex parte Young* exception as Plaintiff alleges an ongoing violation of his constitutional rights

[14]Plaintiff requests a judgment declaring: "UCF's policies, practices, or customs of relying on the NCAA rule in taking adverse actions against [Plaintiff] based on the content of his speech is unconstitutional because it violates his freedom of speech and due process of law guaranteed by the First and Fourteenth Amendments. . . ." (Doc. 1 at 11–12.)

and this form of relief is prospective. Based on the foregoing, the Court finds that all of Plaintiff's requested forms of relief meet the *Ex parte Young* exception and are not barred by the Eleventh Amendment.

**C. Count I: First Amendment Claim under § 1983**

In Count I, Plaintiff brings a § 1983 claim for violation of his right to free speech under the First and Fourteenth Amendments. Plaintiff alleges that UCF violated his freedom of speech by engaging in content-based discrimination.[15] The UCF Defendants do not dispute this but instead compellingly argue that Plaintiff expressly agreed to comply with all NCAA rules as condition of his athletic scholarship and thus waived any claims against UCF for enforcing them, the doctrine of unconstitutional conditions[16] cannot invalidate Plaintiff's express waiver, and *Johnston v. Tampa Sports Authority*, 530 F.3d 1320 (11th Cir. 2008), controls this case. (Docs. 43 at 11–15, 53 at 2–3.) The Court finds that Plaintiff's allegations state a plausible First Amendment claim, and the UCF Defendants' Motion be will denied as to Count I.

"A successful section 1983 action requires that the plaintiff show [he] was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty., Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (citation omitted). In this case, Plaintiff is alleging a violation of his First Amendment right to free speech. The Free Speech Clause of the First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I.

---

[15]In a footnote in Plaintiff's Response, he attempts to raise a "viewpoint" discrimination claim, arguing that UCF's application of the NCAA rules against him is based on his viewpoint as a student-athlete (Doc. 47 at 14 n.1.) Plaintiff failed to such a claim in his Complaint and the time for amending pleadings having run, the claim is waived. *See Brown v. Jarvis*, No. 3:13-CV-915-J-34MCR, 2014 WL 1293066, at *5 (M.D. Fla. Mar. 28, 2014) (holding that plaintiff could not "rely on allegations in her Response which are not set forth in her Complaint") (citation omitted); (Doc. 41 at 1.) (establishing May 11, 2017 as the deadline for the parties to amend pleadings). Similarly, Plaintiff for the first time in his Response, asserts that UCF played a "major role" in formulating the NCAA rules that UCF applied against him. (Doc. 43 at 18–19.) For the reasons discussed *supra*, this assertion is also waived.

[16]"The doctrine of unconstitutional conditions prohibits terminating benefits, though not classified as entitlements, if the termination is based on motivations that other constitutional provisions proscribe." *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986) (citations omitted).

The Free Speech Clause is made applicable to the States via the Fourteenth Amendment. *See Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S. Ct. 2286, 2290, 33 L. Ed. 2d 212 (1972) (citations omitted). Accordingly, governmental "[r]estrictions on speech based on its content are 'presumptively invalid' and subject to strict scrutiny." *Ysursa v. Pocatello Educ. Ass'n,* 555 U.S. 353, 358, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009) (citations omitted). "Government regulation of speech is content based if a [regulation] applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015) (citations omitted). This section of the motion is governed by Rule 12(b)(6). The Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to Plaintiff. *Randall* 610 F.3d at 705. At this stage, Plaintiff only needs to allege enough facts to state a plausible claim. *See Twombly*, 550 U.S. at 570.

In his Complaint, Plaintiff details how UCF canceled his scholarship and removed him from the football team based on his YouTube channel being monetized and the content of the speech in his videos, such as his discussion of his life as a student-athlete. At this stage, these allegations are sufficient to with-stand the Motion to Dismiss. Moreover, these allegations provide the UCF Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Iqbal*, 556 U.S. at 698–99 (citations and internal quotation marks omitted).

The UCF Defendants raise arguments that the Court finds more suitable for summary judgment. They argue that Plaintiff consented to comply with NCAA rules as a condition of receiving a scholarship and thus waived any claims. However, at the motion to dismiss stage, the Court examines whether the facts allege in the complaint state a plausible claim for relief and a

complaint is allowed to go forward even if it appears "that recovery is very remote and unlikely." *Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). The UCF Defendants heavily rely on *Johnston*. However, *Johnston* did not involve a 12(b)(6) motion to dismiss, but review of a preliminary injunction and whether the plaintiff had shown a substantial likelihood of succeeding on the merits. *Johnston*, 530 F.3d at 1324–25. Therefore, the Court will deny the UCF Defendants' Motion as to Count I.

**D. Count II: Substantive Due Process Claim under § 1983**

In Count II, Plaintiff brings a § 1983 claim for violation of his substantive due process right under the Fourteenth Amendment. Plaintiff asserts that "[t]he arbitrary rescission of [Plaintiff's] scholarship violates his substantive due process rights under the Due Process Clause of the Fourteenth Amendment." (Doc. 1 ¶ 53.) Plaintiff argues that the cancellation of his scholarship was arbitrary because it was unrelated to his academic status, disciplinary standing, or athletic performance. (*Id.* ¶ 52.) The UCF Defendants argue that Plaintiff's substantive due process claim must be dismissed because Plaintiff has no fundamental right to receive athletic scholarship funds. (Doc. 43 at 22–23.) The Court agrees.

"To state a substantive due process claim, Plaintiff must identify a violation of a 'fundamental right.'" *MCO Airport Concessions, LLC v. Greater Orlando Aviation Auth.*, No. 6:11-CV-742-ORL22GJK, 2012 WL 12896558, at *7 (M.D. Fla. Feb. 14, 2012), *aff'd*, 508 F. App'x 920 (11th Cir. 2013) (citations and internal quotation marks omitted). In this case, Plaintiff has failed to do so. Fundamental rights are created only by the Constitution. *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 959 n.6 (11th Cir. 1997) (per curiam); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) ("[S]ubstantive due process rights are created only by the Constitution.") (quoting *Ewing*, 474 U.S. at 229). Plaintiff alleges that he has a vested and

constitutionally protected *property interest* in his athletic scholarship. (Doc 1 at ¶ 49.) (emphasis added). However, "[b]ecause property rights are not created by the Constitution, they are not fundamental rights." *Foley v. Orange Cty.*, 638 F. App'x 941, 944 (11th Cir. 2016) (citing *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003)); *see Myers v. Fla.*, No. 5:12-CV-259-RS-EMT, 2014 WL 68067, at *5 (N.D. Fla. Jan. 8, 2014) ("[Property interests] are not fundamental rights, and thus they are not entitled to substantive due process protection.") (citations omitted). "Rather [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *see K & H Dev. Grp., Inc. v. Howard*, No. 3:06-CV494/MD, 2009 WL 1034971, at *11 (N.D. Fla. Mar. 27, 2009) ("It is well-accepted that property interests are not created by the Constitution. . . .") (citations omitted).

In this case, Plaintiff's alleged property interest arises from his scholarship agreement with UCF, not the Constitution; therefore, it is not a substantive due process right. Plaintiff's substantive due process claim fails because Plaintiff has no fundamental right to an athletic scholarship.[17] *Costello v. Univ. of N. Carolina at Greensboro*, 394 F. Supp. 2d 752, 758 (M.D.N.C. 2005) ("Neither the privilege to play collegiate sports nor the benefit of receiving a scholarship to do so, rises to the level of a right, let alone a fundamental right . . . ."); *see Dozier v. Loop Coll., City of Chi.*, 776 F.2d 752, 753 (7th Cir. 1985) ("[T]here is no substantive right to a subsidized education even through secondary school; perforce there is no right to college education at public expense.")

[17] Although the Eleventh Circuit recognizes the "legislative act" exception to the general rule that state-created, non-fundamental rights are not protected by the substantive due process, UCF's cancellation of Plaintiff's scholarship is clearly a non-legislative act because it only applied to him. *Lewis v. Brown*, 409 F.3d 1271 (11th Cir. 2005) (per curiam). Since UCF's cancellation of Plaintiff's scholarship is a non-legislative act, Plaintiff's argument that the cancellation was arbitrary is irrelevant. *Greenbriar Vill., L.L.C*, 345 F.3d at 1263 ("[N]on-legislative deprivations of state-created rights. . . cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrary and irrationally.") (citation omitted).

(citation omitted); *Black v. Sullivan*, 561 F. Supp. 1050, 1058 (D.Me. 1983) ( "A state-subsidized, post-secondary education is not a fundamental constitutional right.") (citations omitted).[18]

In his Response and at the hearing, Plaintiff attempts to recast the due process issue as UCF preventing from him continuing his enrollment at UCF; he claims to have a protected interest in continuing enrollment at UCF, relying on *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012)[19] and *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985).

In *Ewing* and *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 84–85 (1978),the Supreme Court assumed, without deciding, in *the limited context of students challenging academic dismissals*, that the plaintiff had a protected property interest in his or her continued enrollment in a state university but found the substantive due process claims were without merit because the plaintiffs failed to demonstrate arbitrary state action. Subsequently, the Eleventh Circuit and other courts also assumed, without deciding, that "a student who is subject to academic dismissal may maintain a cause of action for the violation of his right to substantive due process." *Richmond v. Fowlkes*, 228 F.3d 854, 859 (8th Cir. 2000); *see, e.g.*, *Keefe v. Adams*, 840 F.3d 523, 533 (8th Cir. 2016) ("Following the Supreme Court's lead, we have repeatedly assumed without deciding that an academic dismissal may be challenged on substantive due process grounds but upheld the summary rejection of those claims, applying the Supreme Court's deferential standard."); *Haberle v. University of Alabama in Birmingham*, 803 F.2d 1536, 1539–41, 1541 n.1 (11th Cir. 1986) (relying on *Ewing*); *Bradley v. Univ. Sys. of Georgia*, No. 1:10-MI-

[18]Moreover, the Supreme Court has held that there is no fundamental right to an education. *Plyler v. Doe*, 457 U.S. 202, 221, 102 S. Ct. 2382, 2396, 72 L. Ed. 2d 786 (1982) ("Public education is not a 'right' granted to individuals by the Constitution.") (citation omitted); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S. Ct. 1278, 1297, 36 L. Ed. 2d 16 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected.").

[19]To the extent Plaintiff relies on *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012), the case is inapposite because it is a procedural due process case and does not address a substantive due process claim. In this case, Plaintiff does not assert a procedural due process claim. *See Taylor By & Through Walker v. Ledbetter*, 818 F. 2d 791, 794 (11th Cir. 1987) (distinguishing substantive and procedural due process).

00029-AJB, 2010 WL 1416862, at *6 n.10 (N.D. Ga. Mar. 11, 2010) ("[The] Supreme Court has assumed without deciding that a dismissed professional school student may have procedural and substantive due process claims."); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1561 (M.D. Ala. 1987), *aff'd*, 858 F.2d 744 (11th Cir. 1988) (assuming that a dismissed college student had a constitutionally protected property or liberty interest in his post-secondary education). Similarly, courts have assumed a fundamental right to continued enrollment in the related context of school suspensions. *See, e.g.*, *Koeppel v. Romano*, 252 F. Supp. 3d 1310, 1321 (M.D. Fla. 2017) (involving a student's suspension from a community college's nursing program and relying on *Horowitz*).

However, these academic dismissal and suspension cases are inapposite because UCF did not academically dismiss nor suspend Plaintiff. UCF removed him from the football team and cancelled his scholarship. Plaintiff has not cited any case law involving a student's removal from an athletic team and cancellation of a scholarship which assumes a fundamental right in continuing enrollment at a post-secondary institution. "The Supreme Court strongly cautions against expanding the scope of substantive due process because of the inability to sufficiently narrow its parameters by providing reasonable 'guideposts for responsible decisionmaking.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (citing *Ewing*). Therefore, the Court does not find that Plaintiff's claim invokes an assumed fundamental right to continued enrollment at UCF. *See Eiland v. Blagburn*, No. 305-CV-459-WKW, 2007 WL 2926863, at *9–10 (M.D. Ala. Oct. 5, 2007) (finding that former student could not rely on assumed constitutionally-protected property right to continue his continued college education to state a substantive due process claim because he had not been dismissed from his doctoral program).

## IV. CONCLUSION[20]

Based on the foregoing, it is ordered as follows:

1. Defendants' Motion to Dismiss, (Doc. 43), filed on April 2, 2018, is **DENIED** as to Count I and **GRANTED** as to Count II.

2. Defendants **SHALL FILE an answer and any defenses** to Count I of the Complaint within fourteen days after this Order's date.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 10, 2018.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record

[20]The Court notes that in Plaintiff's declaration he states: "I never received written notice that I was kicked off the team or that UCF had cancelled my scholarship. No one at UCF informed me that I had a right to contest this decision." (Doc. 47-1 at ¶ 18.) However, in their Reply, the UCF Defendants provided a copy of an e-mail that UCF officials sent to Plaintiff on August 11, 2017, informing him of the cancellation of his scholarship and his right to appeal. (Doc. 53-1 at 5–6.) According to the UCF Defendants, the e-mail was successfully delivered. (Doc. 53). While the Court did not consider this discrepancy in rendering its decision, Plaintiff's statement is misleading.