**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DONALD DE LA HAYE,

    Plaintiff,

    vs.                                                  Case No. 6:18-cv-135-ORL-22GJK

DR. DALE WHITTAKER, *et al.*,
("UCF"),

    Defendants.
_____/

**UCF'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR PROTECTIVE ORDER**

UCF respectfully requests this Honorable Court to render an Order denying Plaintiff's Cross Motion for Protective Order (ECF No. 64), and states in support:

**I.   INTRODUCTION**

Plaintiff seeks to slam the door on UCF's discovery, not even offering to produce the requested records under a confidentiality agreement. The apparent reason is that Plaintiff painted a misleadingly dire picture of his financial affairs in order to overcome UCF's threshold motion to dismiss for lack of standing.

To survive dismissal, Plaintiff represented that UCF's cancellation and continued denial of his athletic scholarship alone prevents him from attending UCF, and that restoration of his scholarship eligibility is the "necessary predicate" to his readmission to UCF, which he would seek "immediately" upon such restoration. ECF No. 47 at 6, 12–13. Standing remains open to review at all stages of litigation, and

UCF respectfully requests the Court to permit UCF to obtain the facts necessary to show that Plaintiff lacks not only standing to sue, but also credibility.

## II. ARGUMENT

Plaintiff argues at length that the information sought is unrelated to the merits of his First Amendment claim, which Plaintiff contends is the "single remaining claim in this case." *Id.* at 1–4.[1] Standing, however, is a "constitutional minimum" that "flows from Article III's case-or-controversy requirement," *Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004)—and one that "remains open to review at all stages of the litigation," *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). Indeed, the Court has an "independent obligation" to examine its jurisdiction, including the standing of parties that assert claims before it. *Bischoff v. Osceola Cty., Fla.*, 222 F. 3d 874, 878 (11th Cir. 2000). The elements of standing are "an indispensable part of the plaintiff's case" and must be supported at each of the "successive stages of the litigation." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1201 (11th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561).

Thus, to the extent Plaintiff argues that discovery directed to standing is not "relevant to any party's claim or defense," ECF No. 64 at 2 (quoting Fed. R. Civ. P. 26(b)), Plaintiff is mistaken: "Standing is a threshold issue in any case that relates to a party's right to bring a claim; therefore, any discovery aimed at a question of standing necessarily involves discovery aimed at the plaintiff's claim." *A&M Gerber*

---

[1] Plaintiff asserts that "the relevant issue is whether UCF engaged in content-based restrictions on [his] speech." ECF No. 64 at 3. Plaintiff adds that "UCF does not dispute" the assertion, but he does so without allowing UCF an opportunity to dispute it. *Id.* UCF most certainly disputes the assertion.

*Chiropractic LLC v. GEICO Gen. Ins. Co.*, No. 16-CV-62610, 2017 WL 4871077, at *1 (S.D. Fla. Aug. 15, 2017). Discovery is not confined to the merits, but clearly extends to Plaintiff's standing.

Equally incorrect is Plaintiff's claim that events occurring after he disenrolled from UCF are categorically irrelevant. Indeed, under the mootness doctrine, even events that postdate the initiation of litigation are relevant to the maintenance of a live controversy. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1267 (11th Cir. 2001). Events that occurred after Plaintiff disenrolled from UCF, and which affect the existence of a live controversy, are relevant and easily within the scope of permissible discovery.

Accordingly, Plaintiff's financial resources are relevant because he seeks prospective equitable relief against UCF, but is no longer a student at UCF and has not sought readmission to UCF. To create the appearance of a live controversy, Plaintiff represented and argued that: (1) his athletic scholarship was the sole means by which he financed his education, ECF No. 47 at 6; ECF No. 47-1 at 5 ¶¶ 21; (2) the continued denial of his scholarship eligibility prevents him from pursuing his college education, ECF No. 47 at 13; (3) the only reason Plaintiff is not presently attending UCF is that UCF revoked his ability to pay tuition, *id.* at 12; and (4) restoration of his scholarship eligibility is a "necessary predicate" to his application for readmission to UCF, *id.* at 6, and that, if his eligibility were restored, Plaintiff would "immediately" apply for readmission to UCF. *Id.*; ECF No. 47-1 at 5 ¶ 22.

In reliance on Plaintiff's representations, the Court concluded that: (1) the cancellation and continued denial of Plaintiff's athletic scholarship prevents him from attending UCF, ECF No. 60 at 17, 25; (2) Plaintiff intends to apply for readmission to UCF, *id.* at 13, 20–21; (3) restoration of his scholarship eligibility would afford him the financial means to continue his education at UCF, *id.* at 20; and (4) as a result, Plaintiff suffers continuing, present adverse effects of the cancellation of his scholarship, and therefore has standing to sue*. Id.* at 13, 16.

Plaintiff now contends his financial resources are irrelevant, yet his arguments in opposition to dismissal—and the Court's resulting ruling on UCF's motion to dismiss—speak for themselves. *See* ECF No. 62 at 5–8. Central to the Court's conclusion that Plaintiff, though not a student, has standing to seek prospective equitable relief against UCF was the finding that Plaintiff intends to seek readmission to UCF, but is unable do so until his scholarship eligibility is first restored. Plaintiff relied on his asserted financial inability to explain why he no longer attends UCF, why he has not applied for readmission to UCF, and why he should nevertheless be allowed to sue UCF for prospective equitable relief.

This explanation was essential to Plaintiff's standing because UCF's enforcement of NCAA rules, and Plaintiff's resulting athletic scholarship eligibility, would cause no actual or imminent injury to a non-student who has not applied for admission or readmission to UCF. Nor would prospective equitable relief afford redress to any such non-student. The appearance of a live controversy between the parties was created by Plaintiff's purported financial inability to pursue his education

at UCF, and his professed "plan" to apply for readmission to UCF immediately upon restoration of his scholarship eligibility. Whether Plaintiff "makes $10 a month or $10 million a month" is relevant because evidence of Plaintiff's resources would refute his explanation of why, if he seeks to pursue his education, he has not already sought readmission to UCF, and undercuts his critical assertion that someday he will seek readmission. ECF No. 64 at 6.

A plaintiff's "some day intentions" are insufficient to establish injury "without any description of concrete plans, or indeed even any specification of when the some day will be." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (internal marks omitted). For twelve months now, Plaintiff has taken no steps to return to UCF. Contrary to Plaintiff's representations of record, UCF is entitled to show that it is not financial inability that has restrained his college education, and that he has no concrete plan to continue his education at UCF.

Having survived dismissal, Plaintiff now discards any pretense that UCF's denial of his athletics scholarship prevents his application for readmission and denies him an education. Nor does he dispute that he has sufficient financial resources to attend UCF without a scholarship. But Plaintiff does not explain why then he has not applied for readmission, or how "the continued denial of his scholarship eligibility prevents [him] from pursuing a college education." ECF No. 47 at 13. Nor does he explain what he meant—or what he expected the Court to conclude—when he stated that restoration of his scholarship eligibility is a "necessary predicate" to his readmission. *Id.* at 6. To avoid dismissal, Plaintiff led the

Court to believe that he wishes to apply for readmission, but lacks the financial means, and that restoration of his scholarship eligibility would enable him to overcome that obstacle and to continue his education at UCF. But to avoid discovery, Plaintiff now abandons that representation—after it has served his threshold purpose of averting the dismissal of his alleged claims.[2]

Plaintiff has admitted the following in his sworn interrogatory answer:

> **INTERROGATORY NO. 1:**
>
> Describe all steps you have taken since May 1, 2017, to seek readmission to UCF or admission to any other college or university, including the name and address of the college or university, the date of your application, and your efforts to obtain student loans, scholarships, or other financial assistance.
>
> **ANSWER NO. 1:**
>
> I have not sought readmission to UCF or any other college or university since May 1, 2017.

Ex. B at 4.[3]

Yet Plaintiff informs this Court—contrary to his own interrogatory answer—that he "is seeking reinstatement to UCF." ECF No. 64 at 7. Plaintiff has not sought

---

[2] Plaintiff was quite willing to make unsupported and misleading assertions to avert dismissal. One example was his remarkable assertion—which not a single fact supports—that UCF "plays a *major* role in both formulating and mandating NCAA rules and policies." ECF No. 47 at 19 (emphasis in original). The Court properly considered this erroneous and uncorroborated assertion to have been waived. ECF No. 60 at 32 n.15. Plaintiff has even admitted to using blatant deception to promote his subject monetized YouTube channel. In May 2017, Plaintiff announced an online "giveaway" of UCF football gear, but concealed from participants (who, for a chance to win, subscribed to his YouTube channel) that his supposed "giveaway" was a ploy, and that Plaintiff had pre-selected a "fake winner," who was one of his close friends. Ex. A at 2.

[3] Plaintiff again misrepresents the facts, claiming that UCF disenrolled him. ECF No. 64 at 2, 10. In truth, Plaintiff disenrolled himself from his Fall 2017 and Spring 2018 classes, with the assistance of his academic advisor. ECF No. 43-1 at 3 ¶ 5.

readmission. Instead, only two days before he objected to UCF's request for production, Plaintiff allowed to pass the July 1st deadline to apply for readmission for UCF's fall 2018 semester.[4] As a result, Plaintiff has not differentiated himself from other non-students of UCF, and has no standing to seek prospective equitable relief against UCF.

Plaintiff also attempts to recast his injury. According to Plaintiff, his injury is not (as he claimed before) that UCF's continued denial of his scholarship prevents him from pursuing his education, but simply that UCF has denied him a scholarship and a place on UCF's football team. ECF No. 64 at 5–6. But Plaintiff is not a student at UCF. A non-student cannot use a scholarship or play on the football team, and therefore suffers no injury from the denial of a scholarship or of a place on the football team.

Thus, while Plaintiff quotes the Court's observation that he "is now denied and will continue to be denied his athletic scholarship and his place on UCF's football team," ECF No. 64 at 5–6 (quoting ECF No. 60 at 13), he ignores the very next sentence: "As a result, Plaintiff alleges that he cannot continue his education at UCF." ECF No. 60 at 13.

As the Court's Order makes plain, it was Plaintiff's supposed inability to continue his education without an athletic scholarship that adversely affected Plaintiff and established his standing to seek prospective equitable relief. If Plaintiff has the financial resources to attend UCF, but nevertheless is not a student and does not

---

[4] *See* https://www.ucf.edu/apply-to-ucf/#undergraduate-deadlines.

seek readmission to UCF, then the denial of a scholarship or place on UCF's football team cannot cause him any actual injury.

The Court recognized this reality in multiple references to Plaintiff's purported plan to seek readmission to UCF, and his professed inability to seek readmission before his scholarship eligibility is restored. *See* ECF No. 60 at 16–17, 20–21, 25, 31–32. In fact, the Court cited cases in which former students with no plan to seek readmission were found to lack standing to seek prospective equitable relief against their former schools. *Id.* at 17 (citing *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 382–83 (5th Cir. 2016), and *B.C. v. Plumas*, 192 F.3d 1260 (9th Cir. 1999)).

UCF is entitled to show that Plaintiff does not intend to seek readmission. And the fact that Plaintiff is financially able to attend UCF (contrary to his representations), but has not taken a single step to seek readmission, is strong evidence that his professed plan to seek readmission is pretextual.

Plaintiff's reliance on *Elrod v. Burns*, 427 U.S. 347 (1976), is misplaced. In *Elrod*, public employees were threatened with discharge on account of their partisan political affiliations or non-affiliations. *Id.* at 349. When the suit was filed, some employees, to avoid discharge, had submitted to restrictions on their political belief and association rights, while others remained under threat of discharge. *Id.* at 373. The Court therefore held that the plaintiffs had shown an irreparable injury sufficient to support issuance of a preliminary injunction. *Id.* at 373–74.

By contrast here, because Plaintiff is not a student at UCF, Plaintiff is not subject to UCF's policies, or to a threat of future enforcement. And through the

requested discovery, UCF intends to show that Plaintiff does not intend to seek readmission, and could already have done so. That Plaintiff has long had sufficient financial resources to attend UCF is an essential part of the showing that UCF intends to make.

*Associated General Contractors v. Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991), is also unhelpful to Plaintiff. There, the plaintiff organization had standing because its members had "firm intentions to take action that would trigger the challenged governmental action." *Id.* at 1407. Here, discovery will establish that Plaintiff has not applied for readmission—even though nothing has hindered him, including financial considerations—and does not have "firm intentions" to apply for readmission.

*Bowers v. NCAA*, 118 F. Supp. 2d 494 (D.N.J. 2000), is also distinguishable. In *Bowers*, the plaintiff was not a former student, but was enrolled in college. *Id.* at 501. The plaintiff had standing to challenge the NCAA's decision to declare him ineligible to play football as a freshman because retroactive restoration of his freshman eligibility would have afforded him an additional year of athletic eligibility in the future. *Id.* at 501–02. *Bowers* is unlike this case, where Plaintiff is not a student at UCF, and where UCF seeks evidence to establish that Plaintiff has no concrete plan to apply for readmission, and thus suffers no present, adverse effects from UCF's cancellation of his scholarship.

Plaintiff posits that, under UCF's theory, a wrongfully terminated employee who has obtained other employment would not have standing to sue the former

employer. ECF No. 64 at 7. But Plaintiff offers no authority to suggest that a former employee may sue a former employer for *prospective equitable relief*—as distinguished from money damages. Plaintiff then cites *Walsh v. Nevada Department of Human Resources*, 461 F.3d 1033, 1037 (9th Cir. 2006), for the proposition that former employees may have standing to sue a former employer if the employees "were in the process of seeking reinstatement to their former positions"—which is exactly the point. Plaintiff is *not* in the process of seeking readmission to UCF, *see* Ex. B at 4, and evidence of sufficient financial resources will refute the only excuse that Plaintiff has ever offered to reconcile (a) his asserted intent to seek readmission, with (b) his failure to seek readmission for at least twelve months.

Plaintiff's assertion that his scholarship was not "need-based" misses the mark. ECF No. 64 at 6, 9. UCF does not seek discovery because the scholarship was need-based, but to disprove Plaintiff's claim that, but for his financial inability, he would have sought readmission to UCF and subjected himself to the alleged actions he challenges.

Plaintiff denounces as "false, scandalous, and nonsensical" UCF's assertion that his intent to seek readmission is pretextual, and he urges the Court to disregard UCF's assertion because UCF makes it "without evidence." *Id.* at 9. No amount of umbrage can shield Plaintiff from scrutiny, however, and it is entirely circular to suggest that UCF should be denied discovery because it does not yet have the "evidence" that it seeks through discovery.

And even without discovery, UCF has identified publicly-available facts indicating that Plaintiff had the financial means to attend UCF, but still did not seek readmission. *See, e.g.*, ECF No. 62 at 10–11 (noting a more than six-fold increase in the number of Plaintiff's YouTube subscribers; Plaintiff's contract with a sports media company; and a video on Plaintiff's YouTube channel entitled "Surprising My Girlfriend With Her DREAM Birthday Vacation! ($10,000)," which chronicles Plaintiff's recent South Beach vacation).

Finally, it defies reason for Plaintiff to insist that "UCF's standing argument is merely a *post hoc* justification" to pry into his financial records. *Id.* at 12. Plaintiff placed his financial resources at issue in his complaint when he relied on his purported financial condition to establish his injury. He alleged that he "relied on that scholarship as the sole means to finance his education," ECF No. 1 ¶ 11, and that UCF's cancellation of his scholarship "result[ed] in his inability to continue his education at UCF," *id.* ¶ 50. In its motion to dismiss, UCF repeatedly noted that Plaintiff is not a student and has not sought readmission, ECF No. 43 at 2, 7, 16, 17, 20, in response to which Plaintiff again asserted his alleged financial incapacity, ECF No. 47 at 6, 12–13; ECF No. 47-1 at 5 ¶¶ 21–22.

UCF served its request for production more than one month *after* Plaintiff responded to UCF's motion to dismiss, and it did so in response to the allegations of the complaint and the assertions that Plaintiff offered in opposition to dismissal. Plaintiff's claim that the rationale for UCF's request for production is fabricated overlooks obvious facts and his course of prior representations to the Court.

### III.   CONCLUSION

Contrary to Plaintiff's representations, UCF's cancellation of his athletics scholarship in accordance with NCAA rules does not prevent Plaintiff from attending UCF or from pursuing his college education. Plaintiff could have applied for readmission to UCF at any time. He has not—and the facts that UCF seeks to discover will refute the one excuse that Plaintiff provided to survive dismissal and rationalize his failure to seek readmission to UCF: purported financial inability. UCF respectfully requests the Court deny Plaintiff's Cross Motion for a Protective Order (ECF No. 64) and affirm UCF's right to discover facts relevant to Plaintiff's lack of standing and credibility.

Respectfully submitted this 22nd day of August, 2018.

/s/ **Richard E. Mitchell**
RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
ANDY BARDOS, ESQ.
Florida Bar No.: 822671
andy.bardos@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Post Office Box 3068 (32802-3068)
Orlando, Florida 32801
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2018, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ **Richard E. Mitchell**
Richard E. Mitchell, Esq.